In the Matter of **PENN CENTRAL TRANSPORTATION COMPANY,** Debtor.

In re **UNITED NEW JERSEY RAILROAD & CANAL COMPANY,** secondary debtor.

No. 70-347-A.

United States District Court, E. D. Pennsylvania.

July 12, 1973.

See also D.C., 355 F.Supp. 1343.

---

## MEMORANDUM IN CONNECTION WITH ORDER NO. 1

FULLAM, District Judge.

Approximately one-half of the rail system of the principal Debtor, Penn Central Transportation Company, is not owned in fee by the Debtor, but is operated under some 42 leases from other railroad companies. In most instances, these lessor companies have virtually no assets except their interests under the leases, and perform no active function except the collection and appropriate distribution of the rentals under the leases. Penn Central has not paid rentals under most of these leases since entering reorganization in 1970.

At an early stage of the Penn Central reorganization proceedings, questions arose concerning the extent of the juris-diction of the reorganization court over the lessors' interests in the properties demised, and the power of the Court to preclude creditors of the lessors from exercising their normal remedies. The Trustees of the Penn Central Transportation Company asserted that the doctrine of In Re Reorganization of Pittsburgh Railways Co., 111 F.2d 932 (3d Cir. 1940), aff'd sub nom., Philadelphia Company v. Dipple, 312 U.S. 168, 61 S. Ct. 538, 85 L.Ed. 651 (1941), established such jurisdiction; others, including certain indenture trustees of lessors' bond issues, asserted the contrary. Neither side was particularly anxious to have the issues immediately resolved. The contending parties thereupon worked out an agreement which was embodied in Order No. 170. Under the terms of that Order, all creditors of the lessors are precluded from enforcing any claims or taking any other action affecting the properties in question, except upon 14 days' notice to the Trustees and all other parties to the Penn Central reorganization; and the Trustees, and all of the lessors, are likewise precluded from filing for the reorganization of any of the lessors, or obtaining any stay order or injunctive relief except upon 14 days' notice to all parties concerned.

The Trustees have now filed a proposed plan of reorganization of the Penn Central Transportation Company, which plan contemplates the reorganization of most of the lessors which are owned or controlled by the Trustees. In conformity with this approach some 15 of the lessor companies propose to file for reorganization as secondary debtors in conjunction with the Penn Central proceeding. Pursuant to Order No. 170, 14-day notices have been given in each case, announcing the respective lessors' intentions to file for reorganization on July 14, 1973.

One of the lessors as to which the 14-day notice has been given is the United New Jersey Railroad & Canal Company. Counsel for the Penn Central Trustees has informed the Court that the Trust-

ees have been advised by telephone that proceedings have been or are being instituted this date in a state court in New Jersey seeking a temporary restraining order to preclude the contemplated filing of the United New Jersey Railroad & Canal Company's petition for reorganization in this Court. It is not altogether clear whether this litigation is instituted on behalf of a creditor of UNJ, in which case such action would seem to be a clear violation of Order No. 170; or whether the action is being instituted on behalf of a stockholder of UNJ, in which case there would seem to be a violation of at least the spirit of Order No. 170.

■ The jurisdiction of this Court to entertain UNJ's petition for reorganization under § 77(a) of the Bankruptcy Act seems entirely clear. Any objections questioning the propriety of such filing, or the propriety of granting such petition, can be pursued in this Court at the hearing mandated by the provisions of the Bankruptcy Act. And this, of course, includes whatever objections might be filed pursuant to the opportunity afforded by the 14-day notice provision of Order No. 170.

■ In order to avoid unnecessary duplication and complexity, and to guard against the threatened interference with the exercise of this Court's jurisdiction, and the orderly proceeding of the Debtor's reorganization and the proposed reorganizations of the secondary debtors, I have granted the Trustees' informal application for partial relief from the strictures of Order No. 170, to the extent of permitting the Trustees, two days in advance of the date specified in their 14-day notices, to cause to be filed the UNJ's reorganization petition, and have entered Order No. 1 in the UNJ reorganization. If, during the balance of the 14-day notice period, valid objections are filed, this Court will promptly reconsider the propriety of Order No. 1 in the UNJ reorganization proceeding. In any event, the propriety of Order No. 1 and all other related matters will be the subject of the hearing to be held pursuant to that Order on July 31, 1973.

ORDER NO. 1 APPROVING PETITION OF UNITED NEW JERSEY RAILROAD AND CANAL COMPANY TO EFFECT A REORGANIZATION IN CONNECTION WITH OR AS PART OF THE PLAN OF PENN CENTRAL TRANSPORTATION COMPANY, DEBTOR

And now, this 12th day of July, 1973, upon consideration of the "Petition of United New Jersey Railroad and Canal Company to Effect a Reorganization in Connection With or as Part of the Plan of Penn Central Transportation Company, Debtor", verified June 29, 1973, and filed herein this day, showing that a majority of the capital stock of the United New Jersey Railroad and Canal Company (Secondary Debtor) is owned, either directly or indirectly through an intervening medium, by the Debtor herein and that the Secondary Debtor is unable to meet its debts as they mature, the Court being satisfied that such petition complies with Section 77 of the Bankruptcy Act (11 U.S.C. Sec. 205) and has been filed in good faith, it is ordered:

1. The Petition is approved as properly filed under Section 77 of the Bankruptcy Act (11 U.S.C. Sec. 205).

2. The Trustees of Penn Central Transportation Company (PCTC), principal debtor herein, are authorized and directed, pending further order of this Court, to continue in possession of and to operate the properties of the Secondary Debtor under the terms and Conditions of Order No. 1, as amended, in the PCTC proceedings.

3. The Secondary Debtor is hereby authorized and directed, pending further order of this Court, to exercise all of the powers, rights, duties and authorities conferred by this order on the Secondary Debtor, to take all actions necessary and appropriate to maintain its corporate existence.

4. The Secondary Debtor shall, pending further order of this Court, make no payments upon or in respect of (a) the principal of, or interest on, any of its funded or floating debt, except that the Secondary Debtor may make payments on the principal of, or interest on, equipment obligations issued, guaranteed or assumed by the Secondary Debtor, (b) taxes, assessments or other governmental charges, except for payroll and withholding taxes, and (c) any debt or other obligation which arose, accrued or became due prior to the filing of the Petition for this Order.

5. The Secondary Debtor may elect to adopt or to reject any lease, agreement or contract not fully performed to which it, or a predecessor, is a party or under which it may be obligated no later than six months (or such further period as this Court may allow) from the date of entry of this Order. Prior to such election the Secondary Debtor may make payments with respect to any such lease, agreement or contract as it deems appropriate. Any such election to adopt or reject shall be made by instrument in writing, signed by a person authorized to act on behalf of the Secondary Debtor, and delivered, or mailed by certified or registered mail, postage prepaid and properly addressed, to the other party or parties to said lease, agreement or contract; and any such election shall be effective only when a copy of such instrument, together with proof of delivery or mailing or other appropriate notice, shall be filed of record in this proceeding. Any person objecting to the adoption or rejection of a lease, agreement or contract shall petition this Court, within 60 days of the Secondary Debtor's election, stating the reasons for such objection. If no objection is filed, the election shall be deemed final and binding without further order of this Court. No occupancy, conduct or user of property of rights by the Secondary Debtor, or payments made by the Secondary Debtor as rent or otherwise, or accepted by it as rent or otherwise, or any other acts or omissions by the Secondary Debtor during said period (or such further period as this Court may allow), except an instrument filed and delivered or mailed as aforesaid expressly electing to adopt or reject any such lease, agreement or contract shall be deemed to preclude or conclude the Secondary Debtor in respect of, or to constitute, such an election. In case any such lease, agreement or contract shall be rejected by the Secondary Debtor, or under a plan of reorganization (whether or not it shall have been previously adopted by the Secondary Debtor), the operation of the leased or used properties shall be deemed to have been, and any payments to have been made, for the account of the lessors or owners, and such payments shall be a charge on the earnings or properties, or both, of the lessor or owner, prior to any mortgage or other lien thereon, as the Court shall determine; and all rights and equities arising from such payments shall be reserved for later determination.

6. Pending further order of the Court, the Secondary Debtor is authorized to institute or prosecute in any court or tribunal of competent jurisdiction all such actions, suits or proceedings as may be necessary for the recovery or proper protection of its property or rights, and to liquidate, compromise or settle any thereof; and to defend, liquidate, compromise or settle any actions, proceedings or suits now pending against the Secondary Debtor or which may hereafter be asserted or brought in any court or tribunal of competent jurisdiction to which the Secondary Debtor is or shall be a party; but no payment shall, without further order of this Court, be made by the Secondary Debtor in respect of any such actions, proceedings or suits on claims accruing prior to the date of this Order, except such claims as may be directed to be paid by this Order, by other orders hereafter entered herein, or by the provisions relating to preferred claims under the Acts of Congress relating to bankruptcy.

7. The Secondary Debtor shall close its present books of account as of mid-

night on July 12, 1973, shall open new books of account as of 12:01 A.M. E.D.S.T. on July 13, 1973, shall preserve records of all receipts and disbursements of the Secondary Debtor, and shall deposit the monies coming into its hands in such banks as it shall select.

8. Each depository of the Secondary Debtor's funds is hereby directed to honor, without set-off, all checks, drafts and vouchers drawn by the Secondary Debtor against its account or accounts and to carry on similar banking transactions with the Secondary Debtor without regard to the fact that the Petition of the Secondary Debtor heretofore filed under Section 77 of the Bankruptcy Act has been approved by this Court, and without regard to any other provision of this Order; provided, however, that the honor pursuant to this Order by a depository of checks, drafts or vouchers drawn by the Secondary Debtor prior to the filing of the Petition for this order or thereafter shall be without prejudice to any claim of set-off and/or any claim of priority by such depository in these proceedings.

9. The Secondary Debtor shall file with the Clerk of this Court not later than September 14, 1973, a statement of the assets and liabilities of the Secondary Debtor as of the close of business on July 12, 1973, and thereafter shall file with said Clerk such other financial statements, schedules or information as this Court may from time to time require. All such financial statements, schedules or information shall be certified as correct by the chief accounting or other appropriate officer of the Secondary Debtor.

10. All persons, firms, corporations and governmental entities, wherever located, are restrained and enjoined from interfering with, seizing, converting, appropriating, attaching, garnisheeing, levying upon, or declaring, imposing or enforcing liens upon, or in any manner whatsoever disturbing any portion of the assets, goods, money, deposit balances, credits, choses in action, interests, railroads, properties or premises belonging to, or in the possession of the Secondary Debtor as owner, lessee or otherwise, or from taking possession of or from entering upon, or in any way interfering with the same, or any part thereof, or from interfering in any manner with the operation of said railroads, properties or premises or the carrying on of its business by the Secondary Debtor under the orders of this Court and from commencing or continuing any proceeding against the Secondary Debtor, whether for obtaining or for the enforcement of any judgment or decree or for any other purpose; provided, however, that suits or claims for damages caused by the operation of trains, buses, or other means of transportation may be filed and prosecuted to judgment in any court of competent jurisdiction and provided, further, that the title of any owner, whether as trustee or otherwise, to rolling stock equipment leased or conditionally sold to the Secondary Debtor, and any right of such owner to take possession of such property in compliance with the provisions of any such lease or conditional sale contract, shall not be affected by the provisions of this Order.

11. All persons, firms, corporations and governmental entities, wherever located, holding collateral heretofore pledged by the Secondary Debtor as security for its notes or obligations or holding for the account of the Secondary Debtor deposit balances, credits or other property or assets are restrained and enjoined from selling, converting or otherwise disposing of such collateral, deposit balances, credits, or other assets or property, or any part thereof, or from offsetting the same, or any thereof, against any obligation of the Secondary Debtor, until further order of this Court.

12. The Secondary Debtor is directed to give notice by mailing a copy of this Order to the trustee or trustees under each mortgage or other indenture pursuant to which any securities of, or assumed or guaranteed by, the Secondary Debtor, have been issued, and to cause a notice, directed to its creditors and

stockholders, to be published within ten days from the date of the entry of this Order, once each in the Evening Bulletin and the Philadelphia Inquirer, newspapers published in the City of Philadelphia, Commonwealth of Pennsylvania, in The New York Times and the Wall Street Journal, newspapers published in the City of New York, State of New York, and in the Chicago Tribune, a newspaper published in the City of Chicago, Commonwealth of Illinois, of a hearing to be held on July 31, 1973 at 10:00 A.M., in Court Room No. 1 of this Court in the United States Court House, Ninth and Market Streets, Philadelphia, Pennsylvania, at which hearing or any adjournment thereof this Court will appoint one or more trustees of the Secondary Debtor's property, which trustees may be the same as the persons now or hereafter serving as Trustees of the property of PCTC. The notice of such hearing shall be substantially in the form of the notice appended hereto as Exhibit A.

13. This Court reserves the full right and jurisdiction to make from time to time such Orders as the Court shall deem proper amending or supplementing this order, or which are within its powers under the Acts of Congress relating to bankruptcy.

### APPENDIX

### EXHIBIT A

NOTICE TO ALL CREDITORS AND STOCKHOLDERS OF UNITED NEW JERSEY RAILROAD AND CANAL COMPANY

Pursuant to an Order entered July 14, 1973, by the District Court of the United States for the Eastern District of Pennsylvania, notice is hereby given that a hearing will be held on _____, at 10:00 A.M., before that Court in Court Room No. _____, in the United States Court House, Ninth and Market Streets, in the City of Philadelphia, Pennsylvania, at which hearing or any adjournment thereof that Court will, pursuant to the provisions of Section 77 of the Bankruptcy Act (11 U.S.C. Sec 205) relating to bankruptcy, appoint one or more trustees of the property of United New Jersey Railroad and Canal Company, which trustees may be the same as the persons now or hereafter serving as Trustees of the property of the Penn Central Transportation Company, Debtor.